Erncie Galaviz
3060 S Decatur Blvd APT A13
Las Vegas, NV 89102
1702-203-8750

**UNITED STATES DISTRICT COURT**

2

**CENTRAL DISTRICT OF CALIFORNIA**

FILED

2024 JAN 18 PM 2: 13

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
BY_____ DE

**FEE PAID**

3   Krystian K. and Erncie Galaviz

4           Plaintiffs,

5   v.          **ED CV 24 - 00123-FWS(AGR)**

6   San Bernardino County Child and         **COMPLAINT VIOLATION OF**

7   Family Services ("CFS") and Ronda       **CIVIL RIGHTS**

8   Begay                                   **DEMAND FOR JURY TRIAL**

9           Defendants.

10                    **PRELIMINARY STATEMENT**

11       1.      Krystian K. has been grossly neglected ever since his entry into CFS's
12   system during March of 2022. He is 5 years old and is in CFS's custody.

13       2.      CFS determined Krystian K. to be autistic. CFS has not sufficiently
14   evaluated him and they have not given him enough attention or provided him with
15   appropriate services to address his needs.

16       3.      Krystian K. has a speech delay that CFS has not addressed. CFS has
17   unnecessarily added severity to Krystian K.'s speech delay by placing him into a
18   Spanish speaking family.

19       4.      Krystian K. was not provided with educational classes or speech classes
20   leading up to his enrollment into school. CFS operates with systematic deficiencies that
21   have prevented Krystian K. from receiving timely and appropriate services to allow for
22   his education development.

23       5.      Krystian K.'s educational and emotional development has already been
24   stunted by CFS. If immediate action is not taken, Krystian K. will be deprived the
25   opportunity of a future that sees his full potential.

26       6.      Plaintiff attended a decisive court hearing on September 7th, 2023 and felt
27   blind-sided when CFS had failed to update and submit all of her completed case plan
28   requirements and instead, petitioned for the court to terminate reunification services.

7.     During the hearing, CFS's representative emphasized a statement about a conversation that occurred between Defendant (Ronda) and Plaintiff. Ronda was Plaintiff's social worker until mid-July 2023.

8.     The statement presented to the court was written by Defendant (Ronda) and falsely stated that Plaintiff had "threatened" her during a conversation that occurred during the first half of the year.

9.     The conversation started because Plaintiff made a verbal complaint to her social worker (Ronda) during the visit that followed a court hearing. Plaintiff brought many things to Defendant's attention including that the case plan wasn't properly updated. Plaintiff requested copies of the case plan requirements she had already completed and Ronda refused to give any copies to Plaintiff and unreasonably asked Plaintiff to repeat the old case plan requirements again.

10.     Plaintiff had further stated the scheduling for her reunification services were always delayed and Defendant (Ronda) replied that any untimeliness in the case plan was due to setbacks because Plaintiff chose to attend a walk-in visit to the medication evaluation, a service required by CFS.

11.     Plaintiff was actually given basic instructions to do the walk-in visit by another CFS worker on February 16th so Plaintiff intended to challenge Defendant's (Ronda's) claim by asking her husband present a picture from his phone showing the instructions for a walk-in visit.

12.     The picture was going to prove that Plaintiff was actually instructed to do the walk-in visit and that Defendant (Ronda) was incorrect to blame CFS's systematic deficiencies on Plaintiff, but Plaintiff's husband was told he wasn't allowed to show the picture from his phone and that if Plaintiff and/or husband decided to challenge that matter further they would not allow him during the visit or any future visits.

13.     Plaintiff and husband did not challenge the matter any further because of fear it would jeopardize their scheduled visits. Plaintiff was following the administrative process of bringing the complaint to her social worker's attention first, then the supervisors, etc. In the end, Plaintiff was reassured all the case planning would be updated for the next hearing and Plaintiff thought it had been resolved.

14.     CFS Victorville has been operating and continues to operate without regard to reasonable professional standards and has exhibited deliberate indifference to the ongoing harm it inflicts on foster children and families.

15.     CFS gives priority to operating under its currently secretive and broken system instead of prioritizing the needs of the children and the needs of the families.

16.     The broken manner in which CFS operates and handles case planning has forced Plaintiff to languish unnecessarily in CFS custody instead of being rightfully reunited.

17.     One example of the broken system is how case planning can only be handled by the designated social worker and at the same time caseworkers spend an average of five working days per month on purely administrative tasks, leaving only 15 working days to actively supervise, plan for, and ensure services for the foster children in their care and for the families.

18.     Despite the many systematic failures and illegal practices of CFS, Plaintiff attends her scheduled visit each week and has completed the case plan requirements set forth, but CFS has acted in bad faith and has violated both Plaintiffs' constitutional and Civil Rights by failing to render appropriate services necessary for Plaintiff's health and development, and also by neglecting to update and submit Plaintiff's case plan required for reunification.

19.     Plaintiff has already exhausted all available remedies. Plaintiff has verbally expressed these fundamental issues and has written complaints for the supervisors. Plaintiff had reunification services terminated at the last hearing. Plaintiff has filed an Ombudsperson complaint resolution form with CFS and has filed a claim against the county form. Plaintiff is left with no other option but to file a lawsuit against Defendants.

20.     Plaintiffs' sufferings are caused by CFS's numerous policies and practices that violate the rights of foster children and families protected by state and federal statutes and safeguarded by the United States and California Constitutions.

21.     CFS's systematic deficiencies have exposed Plaintiffs to maltreatment and Plaintiffs are at a severe risk of future harm.

22.     Plaintiffs seek relief against Defendants to end the ongoing harm and to provide remedy for the severe harm that Plaintiffs have been subject to.

## JURISDICTION

23.     This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. The Court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343(a). The Court may exercise supplemental jurisdiction over the claims based on California law under 28 U.S.C. § 1367(a).

24.     This Court has jurisdiction to issue relief under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

1    25.    Venue in this district is proper under 28 U.S.C. § 1391(b). The
2    divisional venue is in the Eastern Division because the acts giving rise to the claims
3    outlined in this complaint occurred in Victorville, San Bernardino County.

4                                    **PARTIES**

5    I.    **PLAINTIFFS**
6          **A. KRYSTIAN K.**
7          26.    Krystian K. is 5 years old and has been in CFS custody since mid-
8    March of 2022. He was determined to be autistic by CFS but Plaintiff believes he was
9    not properly evaluated before this conclusion was reached. He has delayed speech but
10   is willing to repeat certain words and no doubt has the ability to learn but appropriate,
11   timely, and sufficient services for Krystian K. have not been not provided.
12         **B. ERNCIE GALAVIZ**
13         27.    Erncie Galaviz is the birth mother to Krystian. She is a resident of Las
14   Vegas, Nevada and has been proactive from the start in taking the necessary steps to
15   achieve reunification. She has been visiting her son each week and has completed the
16   requirements set forth for reunification in an individualized case plan.
17   II.   **DEFENDANTS**
18         **A. CHILD AND FAMILY SERVICES ("CFS")**
19         28.    Child and Family Services ("CFS") is a San Bernardino County agency
20   created and authorized under California law. It is responsible for the safety and welfare
21   of foster children in San Bernardino County, California. The acts that took place were at
22   the Victorville location.
23         **B. RONDA BEGAY**
24         29.    Ronda Begay was Plaintiffs' social worker for a majority of the time
25   and for all instances listed in this complaint. Plaintiff believes Ronda failed to properly
26   update the case plan. Plaintiffs had been assigned a couple of social workers since
27   Ronda changed jobs/location. Ronda Begay is a resident of Victorville, California.
28

29                                **APPLICABLE LAW**

30         30.    Federal and state laws impose affirmative duties on state and local
31   officials providing child welfare services that Defendants have consistently failed to
32   satisfy in administering CFS's child welfare system.
33   I.    **FEDERAL AND STATE STATUTES IMPOSE AFFIRMATIVE DUTIES ON**
34         **DEFENDANTS**
35         31.    The Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §
36   670 *et seq.* ("AACWA") requires that state and local child welfare officials:
37              a)    place each child in foster care in a foster placement that conforms to
38                    nationally recommended professional standards, 42 U.S.C. §
39                    671(a) (10);

40              b)    provide each child placed in foster care with a written case plan that
41                    includes a plan to provide safe, appropriate, and stable foster care

4

placements and implement that plan, 42 U.S.C. §§ 671(a) (16), 675(1) (A);

c)  provide each child placed in foster care with the services necessary to enable the child to be returned to their biological parents' home, including services to the parents, or where reunification is impossible or inappropriate, a written case plan that ensures the location of an appropriate adoptive or other permanent home for the child and implement that plan, 42 U.S.C. §§ 671(a) (16), 675(1) (E);

d)  provide each child placed in foster care with a written case plan that ensures the educational stability of the child while in foster care and implement that plan, 42 U.S.C. §§ 671(a) (16), 675(1) (0);

e)  maintain a case review system in which each child in foster care has a case plan designed to achieve safe, appropriate, and stable foster care placements, 42 U.S.C. §§ 671(a) (16), 675(5) (A);

f)  maintain a case review system in which the status of each child in foster care is reviewed every six months by a court, or person responsible for case management, to determine the safety of the child, the continuing necessity and appropriateness of the foster placement, the extent of compliance with the permanency plan, and the projected date of permanency, 42 U.S.C. §§ 671(a) (16), 675(5) (B), 675(5) (C);

g)  maintain a case review system that ensures that for each child in foster care for 15 of the most recent 22 months, CFS petitions to terminate the parental rights of the child's parents, subject to statutory exceptions, and concurrently identifies, recruits, processes, and approves a qualified family for adoption, or documents compelling reasons for determining that filing such a petition would not be in the best interests of the child, 42 U.S.C. §§ 671(a)(16), 675(5)(B), 675(5)(E); and

h)  provide each child in foster care with the services necessary to protect their safety and health, 42 U.S.C. § 671(a) (22).

32.   The Americans with Disabilities Act and the Rehabilitation Act require that state and local officials:

a)  make available a full range of home and community-based placements and necessary and appropriate community-based

services to ensure foster children have access to the least restrictive and integrated setting appropriate to their needs. 42 U.S.C. § 12131 *et seq.;* 29 U.S.C. § 701 *et seq.;* 28 C.F.R. § 35.101, *et seq.;* 45 C.F.R. § 84.1, *et seq.*

33.    The California Government Code and the California Welfare and Institutions Code impose liability on public entities for failing to discharge mandatory duties, including:

a)    completing "[a] written case plan ... within a maximum of 60 days of the initial removal of the child," Cal. Welf. & Inst. Code § 16501.1(e);

b)    updating the case plan "no less frequently than once every six months" and ensuring "[each updated case plan ...  include[s] a description of the services that have been provided to the child under the plan and an evaluation of the appropriateness and effectiveness of those services," *id.;*

c)    developing a case plan that "identifies] specific goals and the appropriateness of the planned services in meeting those goals," Cal. Welf. & Inst. Code§ 16501.1(g) (2);

d)    developing a case plan that "include[s] provisions for the development and maintenance of sibling relationships," Cal. Welf. & Inst. Code § 16501.1(g) (6);

e)    developing a case plan that "ensure[s] the educational stability of the child while in foster care," Cal. Welf. & Inst. Code § 16501.1(g) (8);

f)    if the child's permanency goal is reunification, then developing  a case plan that "describe[s] the services to be provided to assist in reunification," Cal. Welf. & Inst. Code § 16501.1(g) (I0);

g)    if the child's permanency goal is not reunification, then developing a case plan that "include[s] a statement of the child's wishes regarding their permanent plan and an assessment of those stated wishes," Cal. Welf. & Inst. Code § 16501.1(g) (I5);

h)    ensuring "that a child in foster care ...  receive[s] administrative reviews periodically but no less frequently than once every six months" that "determine the appropriateness of the placement, the

1   continuing appropriateness and extent of compliance with the
2   permanent plan for the child, the extent of compliance with the case
3   plan, and adequacy of services provided to the child." Cal. Welf. &
4   Inst. Code§ 16503(a); *see generally* Cal. Gov't Code§ 815.6.

5   34.   The California Government Code and California Code of Regulations also
6   require that:

7   a)   programs or activities conducted, operated, or administered by the
8   state or by any state agency funded directly by the state or
9   receiving financial assistance from the state "meet the protections
10   and prohibitions contained in Section 202 of the Americans with
11   Disabilities Act of 1990 (42 U.S.C. § 12132), and the federal rules
12   and regulations adopted in implementation thereof except that if the
13   laws of this state prescribe stronger protections and prohibitions,
14   the programs and activities [receiving state funding] shall be subject
15   to stronger protections and prohibitions," Cal. Gov't Code§
16   11135(b);

17   b)   "no person in the State of California shall, on the basis of ...  a
18   physical or mental disability, be unlawfully denied the benefits of, or
19   be unlawfully subjected to discrimination under any program or
20   activity funded by the State or receiving any financial assistance
21   from the State," Cal. Code Regs. tit. 2, § 11153; and

22   c)   recipients of state funding provide disabled persons with services
23   that are as effective in affording an equal opportunity to obtain the
24   same result, gain the same benefit, or reach the same achievement
25   level as those provided to others. In some cases, identical
26   treatment may be discriminatory. Cal. Code Regs. tit. 2, § 11154(c).

27   II.   **THE UNITED STATES AND CALIFORNIA CONSTITUTIONS**
28   **IMPOSE ADDITIONAL AFFIRMATIVE DUTIES ON DEFENDANTS**

29   35.   The Fourteenth Amendment of the United States Constitution
30   guarantees to each child in state custody substantive due process rights and
31   requires state and local child welfare officials to:

32   a)   ensure that each child placed in foster care is free from the
33   foreseeable risk of physical, mental, and emotional harm;

7

b) ensure that each child placed in foster care receives the services necessary to ensure their physical, mental, intellectual, and emotional wellbeing in the least restrictive environment;

c) provide each child placed in foster care with conditions, treatment, and care consistent with the purpose and assumption of custody;

d) ensure that each child placed in foster care is not maintained in custody longer than is necessary to accomplish the purpose of custody; and

e) provide each child placed in foster care with reasonable efforts to obtain an appropriate permanent home and family within a reasonable period.

36. The First Amendment's right of association and right to a permanent family, along with the Ninth Amendment's reservation of rights to the people, and the Fourteenth Amendment's right to due process require state and local child welfare officials to:

a) provide reasonable efforts to obtain a permanent home and family.

37. Article I, Section 7(a) of the California Constitution guarantees that:

a) a "person may not be deprived of life, liberty, or property without due process of law." The protections of substantive due process under California law have at least the same scope and purposes as those under the United States Constitution.

## STATEMENT OF CLAIMS

**I.   Defendants did not provide Krystian K. with necessary health assessments and health services and did not accommodate an appropriate learning environment for him.**

38. Defendants must protect children in their care from maltreatment; Defendants must provide children in their care with services necessary to ensure their wellbeing in the least restrictive environment.

39. Krystian K. needed more professional, in depth assessments to accurately determine the appropriate services for his needs. CFS believes that Krystian K. does have special needs, but CFS does not provide reasonable, timely, or effective services to accommodate Krystian K.

40.     Krystian K. has not been provided with the opportunity to an appropriate learning environment that fosters progressive habits to expand vocabulary, speech and overall educational development.

41.     CFS has unnecessarily hindered Krystian K.'s speech by placing him with a Spanish speaking family. This improper placement added severity to Krystian K.s need instead of providing a remedy for it.

42.     Plaintiff had specifically asked for Krystian K. to receive preschool classes in order to prepare him for K-12. Plaintiff was never properly explained how to exercise or given the opportunity to exercise the educational rights. Krystian K. did not receive any preschool classes prior to kindergarten.

43.     Plaintiff has also made complaints about possible abuse due to marks appearing on Krystian K. upon starting the visit and also about possible sexual abuse November 9th, 2023 because upon starting the visit he was grabbing himself strangely as if he had to pee but he didn't have to use the restroom at that time.

44.     Krystian K. is not able to clearly communicate if something had happened to him; Plaintiff believes the investigations into the claims were not taken seriously and Plaintiff considers the assessments performed for any complaint and or request to have been inadequate. Krystian K. has not received enough over sight to ensure proper placement, services, and protection from harm while in CFS custody.

45.     The San Bernardino County Grand Jury "is an independent civil watchdog agency that investigates County agencies, towns and cities, and special districts within San Bernardino County," in line with California Penal Code, section 925.

46.     The Grand Jury has conducted many investigations on CFS throughout the years and released another report in December of 2022. The report detailed many findings on CFS and stated "It is time to realize that the current San Bernardino County Children and Family Services is too broken to fix... Raising a child takes all our efforts and should not be left to the responsibility of a governmental agency or department."

47.     The Grand Jury found during its investigation on CFS "There are insufficient mental health services and resources for the foster children." They further stated "the current level of mental health services for foster children is severely lacking."

48.     Federal and state laws require CFS to provide adequate and timely medical, dental, and physiological assessments to diagnose what services are needed. CFS persistently fails to provide these assessments. In December 2022, only 48.8% of foster children received timely medical examinations, and only 50.4% received timely dental examinations.

49.     When CFS assumes legal custody of children, CFS is required to monitor them to properly ensure their safety and wellbeing.

50.     Part of this responsibility requires CFS's caseworkers to regularly- and thoroughly-visit foster homes to ensure the foster children living there are safe. In fact, caseworkers must visit foster children face-to-face at least once per month, and, during these visits, foster children must receive personalized attention from their caseworker.

51.     Despite the risks, the Grand Jury has found "[Social workers] are not consistently making unannounced visits and are not doing thorough home inspections on monthly visits." "Evidence showed that some [social workers] visit less than monthly and announce their visit ahead of time, allowing possible abusers to hide abuse problems." And the Grand Jury also noted "that these brief interviews led to substantiated abuse cases."

52.     Through established evidence, the Grand Jury believe "[social workers] become[s] too familiar with the resource family and assumes that everything is being done correctly, without checking to verify."

53.     "The Grand Jury found that CFS has made attempts at providing for the safety of those they have been entrusted to protect. However, the CFS of San Bernardino County does not have significant preventative measures to stop the abuse or minimize it within their care. Children are still at significant and unacceptable risk for continued abuse while under the care of CFS."

54.     Defendants have consistently failed to develop a reasonable and effective system. These systematic deficiencies have contributed to any maltreatment in care, lack of adequate services, and inadequate permanency planning, and have exposed Plaintiff to a substantial risk of future harm.

55.     One of the vulnerabilities the Grand Jury has found is "...there are no separate requirements specifically for visiting foster children ages birth to four years old. Babies and toddlers are the most vulnerable population because they are either non-verbal or have difficulty expressing themselves. Therefore, their safety is completely in the hands of the [social workers] assigned to them."

56.     State and federal laws also require that Defendants provide effective services to foster children with disabilities to ensure they are afforded equal opportunity and have access to the least restrictive and integrated setting appropriate to their needs.

57.     Despite these constitutional and statutory mandates, Defendants have failed to protect children in CFS's custody from harm or provide them with services necessary under the law to ensure their wellbeing in the least restrictive environment.

58.     CFS's policies and practices disproportionately harm foster children with disabilities, who are entitled to reasonable   accommodations under the Americans with Disabilities Act and related federal and state statutes.

## II.   CFS did not provide adequate case planning, did not regularly update case planning, and did not provide appropriate, timely services

59.     CFS requires Plaintiff to complete tasks as part of a case plan for reunification. Plaintiff has completed the tasks set forth such as classes, evaluations, and a home visit. Plaintiff's social worker (Ronda) has failed on many occasion to update the case plan and to submit the case plan documents to court.

60.     Ronda conducted the home visit in May 2023 and inspected Plaintiffs apartment for things such as hot running water, electricity, food, etc. Ronda took notes on her visit and before leaving stated the apartment met all criteria required on her checklist. Ronda unreasonably said Plaintiff would need a locked cabinet for any medications. Plaintiff stated she had already completed the medication evaluation and was not prescribed any medication.

61.     Ronda did not personally give Plaintiff any record of the home visit. Plaintiff is unsure if Ronda even updated the home visit into Plaintiff's case plan. To the best of Plaintiff's knowledge, CFS did not submit any record of this home visit, or any of Plaintiff's case plan completions to the court for the hearing on September 7th 2023.

62.     Plaintiff was assigned a new social worker (Tamara) during July 2023 but noticed a different social worker (Gabriela) listed for the September 7th hearing; Plaintiff is unsure when her social worker changed from Tamara to Gabriela. Plaintiff strongly asserts her case plan was not properly updated and passed on to the next social worker. Plaintiff also believes that her case plan has not been given enough attention and had not been appropriately assessed by the new social workers that took over.

63.     During December 2022, The Grand Jury noted a "Lack of transparent record-keeping by CFS; not reported to the public because of confidentiality rules, which inhibits openness and trust..." as being one of many vulnerabilities to the current system.

64.     Defendants have failed to timely develop, regularly update, and implement a case plan and identify an appropriate permanent home for Plaintiff.

65.     Defendants must provide reasonable opportunity for families to receive services and must allow the opportunity for reunification, if reunification is possible.

66.     Federal law requires CFS to provide foster children with a detailed, individualized case plan. These plans are necessary to effectively engage family members and to accommodate services to adequately address their needs and the needs of their children.

67.     The Child Welfare League of America ("CWLA"), a national coalition of agencies that develops child welfare policies, recommends that caseworkers maintain caseloads of between 12 and 15 children in out-of-home care. Similarly, the Council on Accreditation ("COA"), a national professional licensing organization, also recommends that caseworkers maintain caseloads between 12 and 15 children.

68.     CFS permits its caseworkers to carry caseloads that far exceed the recommended standards. In 2022, the Grand Jury found that CFS allows average caseloads of around 70 to 90 children per caseworker.

69.     CFS social workers carry such high caseloads that they cannot sufficiently document and fairly implement each case plan as mandated by federal and state laws.

70.     The Grand Jury has previously concluded that it is "impossible" for case workers to monitor so many children properly, finding that CFS's "mission ... has been unsuccessful ... primarily due to personnel issues and large caseloads."

71.     All available evidence indicates that despite statutory requirements, CFS caseworkers do not complete case plans on time or with all the required information.

72.     CFS' lack of timely, appropriate case planning, by itself, places foster children and families at risk of serious and ongoing harm

73.     Plaintiff made a verbal complaint to her social worker (Ronda) during the visit that followed a court hearing and it was addressed among many things that her case plan wasn't updated (see Preliminary Statement lines 8-13). This is actually part of CFS administrative remedy to address issues directly with the social worker first, and then pass it up to the supervisor, etc.

74.     Plaintiff's complaint may technically have been a "legal threat" because Plaintiff did state intent to sue if the issues weren't properly addressed, but Ronda unreasonably wrote this off on paper as a true threat instead of a legal threat. Plaintiff expressed discontent with how CFS was handling things.

75.     Defendants have had frequent occasions of miscommunication with Plaintiff. Ronda denied any allegations/wrongdoings brought forth by Plaintiff and the issues were suppressed, though Plaintiff was reassured that everything would be taken care of.

76.     It was stated that Plaintiff would still attend the visits and complete the reunification services and CFS workers reassured Plaintiff that everything would be

12

properly updated for the next court hearing. Ronda conducted the home visit in May 2023 and Plaintiff had completed all the reunifications services prior to the court hearing on September 7th 2023.

77.    Defendants must timely develop, regularly update, and effectively implement a written case plan for each foster child in CFS's custody and identify an appropriate permanent home for foster children within a reasonable period, including by petitioning for termination of parental rights within a statutorily-mandated timeframe.

78.    CFS has noted that caseworkers' lack of engagement stemmed from high caseloads, which inhibited caseworkers' "ability to engage in ongoing assessment[s]."

79.    CFS has previously observed several issues interfering with its caseworkers' ability to connect with foster children and their biological and foster families. CFS caseworkers often "do not speak the same language as the family." CFS noticed its caseworkers "were quick to label parent[s] as 'resistant.'" CFS also found that its caseworkers were "missing cultural humility and trauma-informed components to providing services."

80.    CFS allows caseworkers to carry caseloads that are too high to possibly meet the standards they must satisfy under the law. In fact, CFS's caseworkers often carry caseloads five or six times higher than national professional standards recommend. Caseworkers with such high caseloads cannot adequately document and implement each foster child's case plan as mandated by federal and state laws.

81.    High caseloads prevent CFS's caseworkers from adequately assessing a child's safety or wellbeing, developing individualized case plans, facilitating reunification services, and placing children in appropriate placements, all of which are required under state and federal laws.

82.    Federal and state laws require CFS to provide foster children and their families with adequate services so they can be successfully reunited or placed with another permanent family.

83.    Failure to provide the necessary services often leads to escalating behavioral problems, failed placements, and permanent harm to foster children. Despite this, the Grand Jury found, "The evidence showed the social workers' interviews with foster children and their resource families are not being conducted in an effective way."

84.    CFS has previously acknowledged that it has issues resulting from failed policies and practices and CFS has acknowledged that "[c]aseload size impact[ed] [caseworkers'] ability to engage in on-going assessment[s] of child/parents' progress in services."

85.    In a 2017 County Self-Assessment, CFS observed that families' "voices are not being heard." Essentially, case plans were "cookie cutter," "not update[d] . . . [to reflect the child's] progress and new needs," and "not tailored to the family and child's needs." These same problems are occurring now as the Grand Jury stated in 2022, "From the interviews, and from reading the CFS' Policy and Procedures Manual, it became apparent that all the measures and positive policies initiated since 2018 were REACTIVE, NOT PROACTIVE. It appeared it was more of a rebranding of the former Child Protective Services (CPS) to the new CFS had occurred."

III.    **CFS engages in many practices that violate the rights of Plaintiffs and expose them to a severe risk of harm**

86.    Ever since Plaintiff's involvement with CFS in March 2022, Plaintiff has been labeled as mentally unstable and unable to support for basic needs. This impression is because Plaintiff was placed on a 5150 psychiatric hold after voluntarily going to the police station to ask for help regarding potential scams and threats she had received through her phone.

87.    After discovering Plaintiff was in an uncertain situation, one of the officers placed Plaintiff on 5150 hold, with Krystian K. taken into CFS custody. Plaintiff was emotionally distressed because Plaintiff did not have steady income, was a single mother, had gotten out of an abusive relationship, and did not have immediate housing as Plaintiff had traveled from another state.

88.    CFS does not acknowledge that Plaintiff is presently in a different situation.

89.    CFS does not care about factors such as income and housing to show Plaintiff is a contributing member of society who can support for basic needs.

90.    CFS does not acknowledge the progress and self-improvements Plaintiff has made outside of CFS services and also does not acknowledge the efforts and progress Plaintiff has made to be reunited through completion of CFS services.

91.    CFS insists that Plaintiff has made little to no progress. CFS claimed Plaintiff has a mental illness that requires medication only because Defendants had grossly neglected to update Plaintiff's case plan.

92.    Plaintiff lives a very productive and stable life working full-time and renting a two-bedroom apartment in Las Vegas, Nevada.

93.    Plaintiffs' only distress stems from being engulfed within CFS's systematic deficiencies. Plaintiff travels a 6 hour round trip each week from Las Vegas to Victorville for the scheduled visit. Plaintiff has diligently completed the case plan requirements set forth by her social worker but despite these efforts, CFS has failed to update and submit her case plan to allow for reunification.

94.     Plaintiff manages her stresses through healthy, meaningful interactions such as talk therapies and attending church, and also through productive activities such as creating professional music while still working her full time job.

95.     Because of the initial 5150 psychiatric hold, CFS included taking medications as a requirement in her individualized case plan, meaning that Plaintiff would be forced to take medications in order to reunite. Plaintiff has openly opposed this many times for legitimate reasons.

96.     Plaintiff attended an assessment February, 16th 2023 at San Bernardino Department of Behavioral Health (12625 Hesperia Rd, Victorville, CA 92395) and received a psychotropic medication evaluation as required by CFS (this is the walk-in visit that was brought up during the conversation with Ronda).

97.     Plaintiff completed the assessment and it was determined that Plaintiff did not suffer from any symptoms that would qualify her to take prescription medications. Plaintiff was not prescribed any medications.

98.     Plaintiff is also pregnant and expecting a newborn baby with her husband during early February 2024. Defendant had no right to tell Plaintiff to take medications as requirement for reunification when at the same time those medications could unnecessarily add risk of birth defects during pregnancy.

99.     CFS failed to update and submit the psychotropic medication evaluation into the case plan as well as all of Plaintiff's other completions such as the home visit, parenting class, and therapy services. Throughout this ordeal, Defendants have disregarded all of Plaintiff's reunification completions and also all of Plaintiff's self-improvements made outside of CFS regarding finances and Plaintiff's overall situation. Plaintiff believes her case plan was neglected while Ronda was her social worker and furthermore, when Ronda left the case plan was not properly updated, passed on, and then appropriately assessed by Plaintiff's next social workers.

100.    In December of 2022 "The Grand Jury found that for true proactive measures to occur, there needs to be resources and services for biological families who could use help but don't necessarily need involvement with any governmental agency like a foster care system.  There is an urgent need for assistance to be provided to these families without governmental regulation and oversight as they only require a nudge or temporary help."

101.    The Grand Jury stated "The current children and family services system resembles what it has always been for decades. The rebranding of the Child Protection Services into the Children and Family Services resulted in more controls, mandates, and regulations from the top all the way down to the county level. These controls have

1   been so significant and stifling that they have suppressed the local community identity
2   and culture."

3       102.   The Grand Jury found the San Bernardino child welfare system is so
4   "complicated, secretive, and inefficient" that it should be "abolished." Based off their
5   findings, the Grand Jury, recommended they "Disband the current San Bernardino
6   County Children and Family Services organizational system..."

7       103.   "It is time to realize that the current San Bernardino County Children and
8   Family Services is too broken to fix... Raising a child takes all our efforts and should not
9   be left to the responsibility of a governmental agency or department." The Grand Jury
10  also found that "CFS has no local accountability, which allows them to operate behind
11  an air of confidentiality, [which makes] any accountability for their actions extremely
12  difficult."

13      104   "The Grand Jury concluded... the reactive measures instituted since 2018
14  have been ineffective. Most importantly, no proactive measures have been put in place.
15  The conclusion reached, after talking to experts in the field, is the San Bernardino
16  County Children Family Services is too broken to fix and needs to be rebuilt from the
17  ground up."

18      105.   Defendants are operating under unreasonable and illegal standards and
19  practices that fail to provide necessary services as well as adequate case planning that
20  state and federal laws require.

21      106.   Defendants' policies, patterns, practices, and customs have violated and
22  will continue to violate Plaintiffs rights under state and federal laws.

23                          **ALLEGATIONS**

24      107.   Plaintiffs rely on the Defendants for foster care services in San
25  Bernardino County and wholly depend on them to provide those services.

26      108.   Defendants' actions and inactions substantially differ from accepted
27  professional judgment and standards and constitute deliberate indifference to the harm
28  and risk of harm to and violations of Plaintiffs and their legal rights.

29      109.   Defendants fail to protect Plaintiffs from physical and psychological harm
30  and risk of harm.

31      110.   Defendants fail to provide adequate case planning and fail to regularly
32  update case planning.

33      111.   Defendants fail to provide adequate caseworker resources to ensure that
34  Plaintiffs routinely meet with caseworkers face-to-face, receive individualized case

plans, and receive all necessary services to enable them to avoid harm and the risk of harm.

112.   Defendants fail to operate a system that provides an adequate number and diversity of placements to permit Plaintiff to reside in the least restrictive and most family-like environment.

113.   Defendants fail to operate in a manner that sufficiently tailors appropriate placements, treatments, and services for Plaintiffs.

114.   Defendants fail to operate in a manner that promptly and adequately assesses the individual needs of Plaintiffs.

115.   Defendants fail to ensure appropriate preventive measures are in place to stop and or minimize abuse and maltreatments from occurring.

116.   Defendants' systemic failures violate Plaintiffs' rights under the Adoption Assistance and Child Welfare Act, as amended by the Adoption and Safe Families Act, including their right to placement in the least restrictive, most family-like setting, closest to their home community that conforms to professional standards, placement with relatives whenever possible, access to necessary services to protect their safety and health, and comprehensive written case plans, along with a case review system ensuring those case plans are in place and are updated.

117.   Defendants' systemic failures violate Plaintiffs' rights under the California Welfare and Institutions Code, including their right to comprehensive written case plans, along with a case review system ensuring those case plans are in place and are updated.

118.   Defendants' systemic failures violate Plaintiffs' substantive rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Article I of the California Constitution, including exposing children to neglect, abuse, trauma, harmful and inadequate placements, lack of necessary services, and lack of permanency planning.

119.   Defendants' systemic failures violate Plaintiffs' rights under the First Amendment's right of association and right to a permanent family, along with the Ninth Amendment's reservation of rights to the people, and the Fourteenth Amendment's right to due process.

## CAUSES OF ACTION

**I.    42 U.S.C. § 1983 The Adoption Assistance and Child Welfare Act**

120. Plaintiffs repeat and incorporate each allegation in this complaint.

121. Federal law gives Plaintiffs specific rights under the AACWA.

122. Defendants' foregoing policies, patterns, practices, or customs deprive Plaintiffs of their rights under the AACWA, as amended by the ASFA, to:

    a)   placement in the least restrictive and most family-like setting, closest to their home community that conforms to nationally recommended professional standards, 42 U.S.C. §§ 671(a)(16), 675(5)(A);

    b)   access to quality services to protect their safety and health, 42 U.S.C. § 671(a)(22);

    c)   a written case plan that includes a plan to provide safe, appropriate, and stable placements, 42 U.S.C. §§ 671(a)(16), 675(1)(A);

    d)   a written case plan that ensures that they receive safe and proper care while in foster care and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

    e)   a written case plan that ensures the provision of services to themselves, their parents, and their foster parents to facilitate reunification, or where that is not practicable, their permanent placement and implementation of that case plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

    f)   a case review system in which Plaintiff has a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to their home community, 42 U.S.C. §§ 671(a)(16), 675(5)(A).

## II. Cal. Welf. & Inst. Code§ 16501.1, 16503(a), *et* seq. State Statutory Rights

123. Plaintiffs repeat and incorporate each allegation in this complaint.

124. California Government Code imposes liability on public entities for injuries proximately caused by their failure to discharge a mandatory duty "unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Cal. Gov't Code § 815.6.

125. State law imposes specific mandatory duties on the Defendants under the California Welfare and Institutions Code.

126.    The Defendants' foregoing policies, patterns, practices, or customs deprive Plaintiffs of their rights in the California Welfare and Institutions Code, including:

a)    the right to have "[a] written case plan ... completed within a maximum of 60 days of the initial removal of the child," Cal. Welf. & Inst. Code § 16501.1(e);

b)    the right to have the case plan updated "no less frequently than once every six months," and for "[e]ach updated case plan [to] include a description of the services that have been provided to the child under the plan and an evaluation of the appropriateness and effectiveness of those services, *id.;*

c)    the right to have the case plan "identify specific goals and the appropriateness of the planned services in meeting those goals," Cal. Welf. & Inst. Code § 16501.1(g) (2);

d)    the right to have the case plan "include provisions for the development and maintenance of sibling relationships," Cal. Welf. & Inst. Code§ 16501.1(g) (6);

e)    the right to have the case plan "ensure the educational stability of the child while in foster care," Cal. Welf. & Inst. Code § 16501.1(g)(8);

f)    if the child's permanency goal is reunification, the right to have the case plan "describe the services to be provided to assist in reunification," Cal. Welf. & Inst. Code § 16501.1(g) (I0);

g)    if the child's permanency goal is not reunification, the right to have the case plan "include a statement of the child's wishes regarding their permanent placement plan and an assessment of those stated wishes" Cal. Welf. & Inst. Code§ 16501.1(g) (15);

h)    the right to have "the agency responsible for placement and care of a minor ... ensure that a child in foster care ... receive[s] administrative reviews periodically but no less frequently than once every six months," Cal. Welf. & Inst. Code§ 16503(a); and

i)    the right to have the administrative review "determine the appropriateness of the placement, the continuing appropriateness and extent of compliance with the permanent plan for the child, the

1      extent of compliance with the case plan, and adequacy of services
2      provided to the child." Cal. Welf. & Inst. Code § 16503(a).

3   **III.   42 U.S.C. § 1983 Federal Right to Substantive Due Process**

4   127.   Plaintiffs repeat and incorporate each allegation in this complaint.

5   128.   States and municipal entities assume affirmative duties under the
6   Fourteenth Amendment to the United States Constitution to provide reasonable care and
7   protect from harm any child with whom they have formed a special relationship, such as
8   children in foster care.

9   129.   These substantive due process rights include, but are not limited to:

10      a)   the right to freedom from the foreseeable risk of maltreatment
11           while under the protective supervision of the State;

12      b)   the right to protection from unnecessary intrusions into the
13           child's emotional wellbeing once the State has established a
14           special relationship with that child;

15      c)   the right to services necessary to prevent unreasonable risk of
16           harm in the least restrictive environment;

17      d)   the right to conditions and duration of foster care reasonably
18           related to the purpose and assumption of government custody;

19      e)   the right to treatment and care consistent with the purpose and
20           assumptions of government custody;

21      f)   the right not to be maintained in custody longer than is necessary to
22           accomplish the purpose to be served by taking a child into
23           government custody; and

24      g)   the right to receive or be reunited with an appropriate permanent
25           home and family within a reasonable period.

26   130.   Defendants have developed and maintained policies, patterns, practices, or
27   customs that represent a substantial departure from accepted professional judgment and
28   standards and deprive Plaintiffs their constitutionally-protected rights.

29   131   Defendants know that these policies, patterns, practices, or customs
30   exist and harm Plaintiffs, yet are deliberately indifferent to the harm they cause. As a
31   result, Plaintiffs have been, and are at substantial risk of being, deprived of their
32   constitutional rights.

**IV.    Art. I, §7(a) Cal. Const. State Right to Substantive Due Process**

132.    Plaintiffs repeat and incorporate each allegation in this complaint.

133.    Municipal entities assume affirmative duties under Article I of the California Constitution to provide care and protect from reasonable harm any child with whom it has formed a special relationship, such as those in foster care.

134.    Defendants have developed and maintained policies, patterns, practices, or customs that substantially depart from accepted professional judgment and deprive Plaintiffs of their constitutionally-protected rights.

135.    Defendants know that these policies, patterns, practices, or customs exist and harm these class members, yet are deliberately indifferent to them. As a result, Plaintiffs have been, and are at substantial risk of being, deprived of their constitutional rights.

**V.    42 U.S.C. § 1983 Federal Right to Family Association**

136.    Plaintiffs repeat and incorporate each allegation in this complaint.

137.    The First Amendment's right of association and right to a permanent family, along with the Ninth Amendment's reservation of rights to the people, and The Fourteenth Amendment's right to due process impose on states and municipalities affirmative duties to provide reasonable efforts to obtain a permanent home and family.

138.    Plaintiff is in Defendants' custody or guardianship and depends on Defendants to provide for their basic physical, psychological, and emotional needs and to protect them from physical, psychological, and emotional harm.

139.    Plaintiff frequently and foreseeably suffers physical, psychological, and emotional harm in CFS's custody.

140.    Professional judgment and standards of conduct require Defendants to make reasonable efforts toward placing children in their custody in stable, permanent families.

141.    Defendants know Plaintiff has a right to a permanent home and family yet have failed to make reasonable efforts to achieve this.

142.    Defendants' foregoing policies, patterns, practices, or customs represent a substantial departure from professional judgment and represent deliberate indifference to Plaintiffs constitutional rights.

143.   As a result, the Plaintiffs have been, and are at risk of being, deprived of their right to familial association and reasonable protection from physical, psychological, and emotional harm while in Defendants' custody. This violates the First Amendment's freedom of association, the Ninth Amendment's reservation of rights to the people, and the Fourteenth Amendment's substantive due process protections.

## VI.   42 U.S.C. § 12131 *et seq.* The Americans with Disabilities Act

144.   Plaintiffs repeat and incorporate each allegation in this complaint.

145.   Title II of the ADA, 42 U.S.C. § 12131, *et seq.,* and its enabling regulations, 28 C.F.R. 35.101 et *seq.* (2022) prohibit public entities from discriminating against individuals with disabilities because of their disability.

146   Specifically, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

147.   Plaintiff may experience physical, cognitive, and or psychiatric disabilities that would qualify him as an individual with disabilities under the ADA. 42 U.S.C. § 12131(2).

148.   Defendants are public entities and public officials of those entities, and all are subject to the ADA. 42 U.S.C. § 12131(1)(A)-(B).

149.   Under the regulations implementing the ADA, public entities may not, directly or through contractual, licensing, or other arrangements, do any of the following based on an individual's disability:

    a)   "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from aid, benefit, or service," 28 C.F.R.  § 35.130(b)(l)(i);

    b)   "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," 28 C.F.R. § 35.130(b)(l)(ii);

    c)   "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others," 28 C.F.R. § 35.130(b)(l)(iii);

d) "[a]id or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program," 28 C.F.R. § 35.130(b)(l)(v); or

e). "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service," 28 C.F.R. § 35.130(1)(vii).

150.    A public entity also may not use criteria or methods of administration that

a) "have the effect of subjecting qualified individuals with disabilities to discrimination based on disability," 28 C.F.R. § 35.130(b)(3)(i);

b) "have the purpose or effect of defeating or substantially impairing the accomplishments of the objectives of the public entity's program with respect to individuals with disabilities," 28 C.F.R. § 35.130(b)(3)(ii); or

c) "perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State," 28 C.F.R. § 35.130(b)(3)(iii).

151.    Instead, the public entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability [.]" 28 C.F.R. § 35.130(b) (7) (i).

152.    Defendants, however, through their foregoing policies, patterns, practices, or customs, have discriminated against Plaintiff based on his special needs in violation of 42 U.S.C. § 12132.

153.    As a result, Plaintiff has suffered injuries, is at risk of suffering injuries, and will continue to be at risk of suffering further injuries unless Defendants are required to comply with applicable law.

## VII.    29 U.S.C. § 701 *et seq. The* Rehabilitation Act

154.    Plaintiffs repeat and incorporate each allegation in this complaint.

155.    The Rehabilitation Act and its implementing regulations prohibit entities receiving federal funding from excluding individuals with disabilities or from discriminating against individuals because of their disabilities. 29 U.S.C. § 794(a).

156.   Under the regulations implementing the Rehabilitation Act, covered entities may not, directly or through contractual, licensing, or other arrangements, do any of the following based on disabilities:

    a)    "[d]eny a qualified [individual with a disability] the opportunity to participate in or benefit from aid, benefit, or service," 45 C.F.R. § 84.4(b) (l) (i); *see also* 45 C.F.R. §84.52(a) (l);

    b)    "[a]fford a qualified [individual with a disability] an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," 28 C.F.R. § 84.4(b) (l) (ii); see *also 45* C.F.R. §84.52(a) (2);

    c)    "[p]rovide a qualified [individual with a disability] with an aid, benefit, or service that is not as effective as that provided to others," 28 C.F.R. § 84.4(b) (l) (iii), (2); *see also* 45 C.F.R. §84.52(a) (3);

    d)    "[p]rovide benefits or services in a manner that limits or has the effect of limiting the participation of qualified [individuals with disabilities]," 45 C.F.R. §84.52(a) (4);

    e)    "[a]id or perpetuate discrimination against a qualified [individual with a disability] by providing significant assistance to an agency, organization, or person that discriminates on the basis of [disability] in providing any aid, benefit, or service to beneficiaries of the [covered entity's] program," 28 C.F.R. § 84.4(b)(l)(v); or

    f)    "[o]therwise limit a qualified [individual with a disability] in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service." 28 C.F.R. § 84.4(b)(l)(vii).

157.   A public entity also may not use criteria or methods of administration

    a)    "have the effect of subjecting qualified [individuals with disabilities] to discrimination on the basis of [disability]," 28 C.F.R. § 84.4(b)(4)(i);

    b)    "have the purpose or effect of defeating or substantially impairing accomplishments of the objectives of the [covered entity's] program or activity with respect to [individuals with disabilities]," 28 C.F.R. § 84.4(b) (ii); or

c)     "perpetuate the discrimination of another [covered entity] if both public entities are subject to common administrative control or are agencies of the same State," 28 C.F.R. § 84.4(b) (iii).

158.   Defendants receive substantial federal funding to operate the statewide foster care system, and CDSS and CFS's operations constitute a "program or activity" under the Rehabilitation Act. 29 U.S.C. § 794(a), (b) (l) (A).

159.   Defendants have violated the Rehabilitation Act by failing to provide foster children with disabilities an equal opportunity to participate in foster care services detailed above.

160.   As a result of Defendants' past and ongoing violations of the Rehabilitation Act, Plaintiff has suffered injuries, is at risk of suffering injury, and will continue to be at risk of suffering further injuries unless Defendants are required to comply with applicable law.

**VIII.     Cal. Gov't Code§ 11135 et seq., Cal. Code Regs. tit. 2 § 11140 et seq.- State Right Against Unlawful State Discrimination**

161.   Plaintiffs repeat and incorporate each allegation in this complaint.

162.   Defendants have discriminated against Plaintiff by failing to make reasonable modifications in their policies, patterns, practices, or customs that would allow him to participate in and benefit from Defendants' foster care and health services.

163.   Reasonable modification of Defendants' policies, patterns, practices, or customs would not fundamentally alter the nature of their services, programs, or activities but would further their stated goals.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following relief from this Honorable Court:

I.     Assert jurisdiction over this matter;

II.    Under Rule 57 of the Federal Rules of Civil Procedure, declare unconstitutional and unlawful:

a. Defendants' violation of Plaintiffs' rights under the Adoption Assistance and Child Welfare Act, as amended by the Adoption and Safe Families Act;
b. Defendants' violation of Plaintiffs' rights under the California Welfare and Institutions Code;

1        c.   Defendants' violation of Plaintiffs' rights under the Fourteenth Amendment to
2           the U.S. Constitution;
3        d.   Defendants' violation of Plaintiffs' rights under Article I of the California
4           Constitution;
5        e.   Defendants' violation of Plaintiffs' rights under the First, Ninth, and
6           Fourteenth Amendments to the U.S. Constitution;
7        f.   Defendants' violation of Plaintiffs' rights under The Americans with
8           Disabilities Act;
9        g.   Defendants' violation of Plaintiffs' rights under the Rehabilitation Act;
10       h.   Defendants' violation of Plaintiffs' rights under the California Government
11          Code;

12 III.    Permanently enjoin Defendants from subjecting Plaintiffs to practices that violate
13      their rights;

14 IV.    Award Plaintiffs with compensatory damages and punitive damages, for the
15      sufferings and expenses incurred due to Defendants' violations of Plaintiffs'
16      rights, including but not limited to travel, services for specific needs, therapy and
17      services to restore quality of life, legal expenses, and to recover all other
18      expenses incurred for past, present, and future in excess of $75,000; and;

19 V.     Grant such other relief as this Honorable Court deems just, necessary, and
20      proper to protect Plaintiffs against further harm from CFS.

21                          **CERTIFICATION AND CLOSING**

22 Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my
23 knowledge, information, and belief that this complaint: (1) is not being presented for an
24 improper purpose, such as to harass, cause unnecessary delay, or needlessly increase
25 the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for
26 extending, modifying, or reversing existing law; (3) the factual contentions have
27 evidentiary support or, if specifically so identified, will likely have evidentiary support
28 after a reasonable opportunity for further investigation or discovery; and (4) the
29 complaint otherwise complies with the requirements of Rule 11.

30 DATE: *01-18-24*

31 SIGNATURE:

32                      Erncie Galaviz
33                      3060 S Decatur Blvd Apt A13
34                      Las Vegas, NV 89102
35                      Telephone: (702) 203-8750
36                      worldleadergoddesserncie@gmail.com
37                      Plaintiff, in Proper Person

222 West Hospitality Lane, Third Floor, San Bernardino, CA 92415

www.SBCounty.gov



**SAN BERNARDINO**
**COUNTY**

January 5, 2024

**Department of**
**Risk Management**

**Victor Tordesillas**
Director

**Phone Number**
909.386.8655

**Fax Numbers**
Admin/Fiscal:   909.382.3211
Workers Comp:  909.386.8711
Liability:          909.382.3211
Safety:            909.382.3212

Erncie Galaviz
3060 S. Decatur Blvd., #A13
Las Vegas, NV 89102

**RE:**   Claimant................ Erncie Galaviz
        Date of Loss............09/07/2023
        Amount of Claim...... Undetermined
        Our File..................146140

Notice is hereby given that the claim which you presented to the County of San Bernardino on November 27, 2023 was rejected on January 5, 2024.

**WARNING**

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code Section 945.6.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

Respectfully,

Sophia Salas
Liability Claims Rep II
(909) 386-8638
DEPARTMENT OF RISK MANAGEMENT

BSWARa

BOARD OF SUPERVISORS

COL. PAUL COOK (RET.)   JESSE ARMENDAREZ   DAWN ROWE   CURT HAGMAN   JOE BACA, JR.   Luther Snoke
Vice Chairman, First District   Second District   Chair, Third District   Fourth District   Fifth District   Chief Executive Officer

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA      )
                               )   ss:
COUNTY OF SAN BERNARDINO  )

      I, the undersigned, declare:

      I am employed in the County of San Bernardino, State of California; I am over the age of 18 years and not a party to this action; my business address is 222 West Hospitality Lane, Third Floor, San Bernardino, California, 92415-0016.  I am familiar with this office's practice for collection and processing of documents for mailing with the United States Postal Service.  The documents are deposited with the United States Postal Service on the same day in the ordinary course of business.  On the date written below, I served the document named below on the parties indicated by placing a true copy thereof enclosed in a sealed envelope for collection and mailing from 222 West Hospitality Lane, Third Floor, San Bernardino, Ca. following ordinary business practice, addressed as follows, and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration is executed on January 5, 2024, at San Bernardino, California.

**DOCUMENT: BSWARa**

**PARTIES SERVED:**

             Erncie Galaviz
             3060 S. Decatur Blvd., #A13
             Las Vegas, NV 89102

_____
                                       Declarant

proofsvc